[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by plaintiff, Aecon, Inc. (Aecon), against defendants, J. Richard Rolocut and Eugene Simmons (R S) for moneys due in connection with of construction of an addition to an existing commercial building on premises owned by R S at 70 King Spring Road, Windsor Locks.
The revised complaint dated March 3, 1989 is in two counts; the first alleging breach of contract, the second count sounding in quantum meruit, alleging a past balance due for labor and materials in the amount of $10,500. Defendants have filed a special defense alleging substantial non-performance and a counterclaim seeking damages for their costs to complete the contract.
Trial was held before this court on September 27 and October 1, 1991, with proposed finding of facts filed on October 24, 1991. At trial, it was stipulated that plaintiff CT Page 2629 was proceeding primarily under its second count sounding in quantum meruit.
Aecon and R S entered into a written agreement dated July 7, 1982, under which Aecon agreed to supply a "preengineered" shell from Inryco on foundations by others" consisting of approximately 8000 square feet, with a mansard, for the sum of $50,200.00, payable as follows:
Initial Deposit $5,000
On delivery of steel but prior to erection 34,000
On erection of red Iron prior to start of sheeting 7,300
Completion of sheeting 3,900
Under the agreement Aecon was responsible for "the architectural and engineering services necessary to prepare the plans for the foundation and the building shell." All other general contractor costs such as permit fees and utilities were the responsibility of R S.
Plaintiff admits receiving payment, including the deposit of $39,000. In addition to balance due under the contract in the amount of $11,200, plaintiffs claim payment for "extra work" performed by it in the amount of $4,240. The claim consists of two items; $1597 for labor and materials to buttress up the existing end wall of the existing structure to support the roof structure of the addition; and $2645 for larger facia panels.
 I.
Considerable testimony was heard as to which party had the responsibility for determining whether the existing end wall was "expandable" in the sense that it could support the new roof structure. The plan attached to the contract shows the end wall in question to be "expandable" when in fact it was not, and it is clear that both parties erroneously assumed that it was expandable. There was conflicting testimony as to which party had better opportunities for inspecting the existing end wall. No agreement was ever made for the cost of this extra. Since the burden of proof for sustaining the responsibility for this extra is on Aecon, and Aecon agreed to provide "engineering services necessary to prepare the plan", we conclude that Aecon has failed to prove that R S was responsible for this extra cost. CT Page 2630
 II.
The second item claimed as an "extra" was the sum of $2645 for expanded facia panels and soffit to compensate for the reduction in the height of the "kicker walls", from the 12-foot height set forth in the contract to 10 feet. R S ordered the change from 12 feet to 10 feet, claiming that the 12 feet specification was a mistake of Aecon. Under the contract, R S assumed responsibility for all the concrete and masonry work. The 12-foot height is clearly specified in the contract, as is the 5' 4" height of the facia panels to be furnished by Oecon. When Aecon was required to pay higher costs for facia panels 7' 4" high, to compensate for the reduction in height of the kicker walls erected by Aecon. Aecon was entitled to the additional extra cost of $2645 for the expanded fascia panels.
 III.
R S also claims that the panelling which was delivered to the site by Aecon could not be used because it was not the correct color.
On October 14, the panels delivered to the site were rejected by R S on the basis of wrong color. A specimen panel introduced into evidence is approximately 72" by 40", brown on one side, and off-white on the other. Its horizontal length is characterized by regular vertical grooves spaced approximately three inches apart. The brown side has a protruding raised area approximately three inches wide spaced at intervals of about 12".
The brown color on the protruding side is similar to the color depicted as "seal brown" on the Inryco color chart in evidence. Seal brown was the color specified for the panels in the contract.
R S rejected the panels on the basis that the addition was to match the existing building which was brown in color, but while the off-white or non-protruding side of the panels more closely approximated the groove pattern of the panels in the existing building the brown side of the panels was definitely dissimilar. In fact R S never utilized these panels but had the work completed with panels supplied and installed by a subsequent contractor. The offer by Aecon to paint the white side of the panels brown was rejected by R S.
This claim of "wrong color panels" by R S is not supported by the evidence. The written contract contains no CT Page 2631 language about the "matching" of the addition to the existing panelling. The "seal brown" color was selected by the defendants from the color chart. No persuasive evidence was presented that the "protruding" side of the panels, seal brown in color, was such a mismatch with the existing panelling as to justify the non-acceptance of the panelling by R S. Indeed, photographs in evidence of the addition as finally completed by another contractor seem to indicate a marked difference between the shades of brown on the addition and the existing building, as well as some slight deviations in the width of the vertical grooves on the addition an compared to the existing building.
 V.
R S claims that Aecon's failure to substantially complete the contract in a timely fashion and its insistence on being paid for the two "extras" justified its order on October 14, 1982 for R S to cease any further work on the building addition. These claims form the basis on which R S asserts its counterclaim for the costs it expended to complete the contract utilizing another contractor.
The only reference to time in the contract is the shipment of the shell by Inryco which was anticipated to take place within 4 to 5 weeks after the order for steel had been confirmed by Inryco. No completion date appears in the contract itself, nor was any reference made to time being of the essence. R S, acting as the contract coordinator to the extent that anyone did, never set forth in writing a schedule of proposed target dates for work progress or completion.
In view of the problems relating to the expandability of the existing end wall, the various changes in the height of the masonry walls and other specifications; the question of when the final red iron should be installed pending the completion of the masonry work, various minor foundation corrections and the various intervals of inclement weather, we cannot find that Aecon's work on the project was so full of delays as to justify the repudiation of the contract by R S.
 VI.
R S further claims that no additional payments were due to Aecon because Aecon failed to complete the "red iron" work, upon which the next payment of $7300 was predicated. Aecon claims that most of the red iron installation was complete by September 25, 1982 when it billed R S for the next payment of $7300 and that the final installation of red iron was postponed to accommodate the completion of the masonry work under the direction of R S. In any event, after an CT Page 2632 exchange of demands and letters, the red iron installation was completed by October 13, 1982.
Other claims of R S relating to the failure of Aecon to furnish architects' plans are found to be without merit.
 VII.
R S claims that some of the materials which Aecon was required to deliver to the site were in fact not delivered and had to be purchased by R S before the job could be completed by Pre-design. This consisted primarily of insulation, fasteners and some red iron.
R S introduced evidence that it paid $6722.76 for such materials (Defendant's Exhibit 4), which included the new panelling as well as gutters, not part of the Aecon contract. The cost of the new panelling with its fasteners appears to be $3250 (Defendant's Exhibit 3). The court estimates, and the parties agree, that the cost of the gutters was $450, leaving a balance expended by R S for missing materials required to be furnished by Aecon in the amount of $3022.76.
 VIII.
It is found that when R S terminated Aecon's contract on October 1982, that approximately ten percent of Aecon's labor obligations had not yet been performed and that the value of such incompleted work was $4072. Had Aecon completed this work and furnished all required materials, it would have been due its final payment of $3900.00.
After crediting to Aecon the sum of $7300, plus $3900, plus the extra facia work and materials of $2645, and deducting from that sum the sum of the value of the incompleted work ($4072) and the unfurnished materials ($3022.76), it is found that a net amount of $6,750.24 is due to Aecon, plus interest from the date this action was instituted, August 10, 1988.
WAGNER, JUDGE